In the Matter of WILLIAM A. BRANAGAN, Appellant, *v.* REUEL M. TODD et al., as Election Commissioners of the County of Oswego, et al., Respondents.

Fourth Department, September 20, 1963.

*Murray M. Schwartz* for appellant.

*George Vallette* for John S. Johnson, respondent.

*Charles R. Sauers* for Reuel Todd and another, respondents.

*Per Curiam.* The validity of the Democratic primary election for the office of Mayor of the City of Fulton is in question.

Petitioner contends that in one of the city's election districts the election was "characterized by such * * * irregularities as to render impossible a determination as to who rightfully was nominated" (Election Law, § 330, subd. 2), and this appears to be so. In fact it was stipulated by the parties in Special Term and in this court that " This [voting] machine tabulated a vote of 83 votes for Johnson, and 26 for Branagan, a total of 109 votes cast by Democrats, which total is 47 more votes tabulated on the machine than Democrat voters who voted."

The stipulation itself, without more, demonstrates the irregularities claimed in said district. It is clear, under the language of the stipulation, that 47 votes were counted and tabulated by the machine in excess of the actual votes cast.

The outcome of the entire citywide election would be decisively influenced by the crediting of said votes or a substantial portion thereof, and the matter cannot be disposed of on the theory that there is " a mere mathematical possibility that the results could have been changed, when the probabilities all combine to repel any such conclusion ". (*Matter of Badillo* v. *Santangelo,* 15 A D 2d 341, 342.)

Without computing any of the votes from the district in question the petitioner had received 387 votes and his opponent Johnson 363, a difference of 24 votes out of a total of 750 votes cast. If this same proportion had been maintained in the district in question the petitioner would have received the nomination. Thus the factual situation in the present case is vastly different from that in the *Badillo* case where the petitioner was 75 votes behind Santangelo after a total of 2,869 votes had been cast. The court observed: " As we compute it, only if Santangelo had received 83 of the 90 invalid votes would the results of the election have been changed, as in such event Badillo would have had a margin of one vote of those qualified to vote." (p. 342.) This would have approximated 90% of the invalid votes which, as the court observed, presented " a mere mathematical possibility ".

As was noted in *Matter of McGuinness* v. *De Sapio* (9 A D 2d, 65, 71) : " The burden imposed by the statute will be satisfied in this proceeding by a showing (1) that there has been an irregularity, (2) that the result *could* have been affected thereby, and (3) that because of the irregularity it is impossible to determine one way or the other who rightfully were elected * * * A showing of the possibility of a changed result is enough, for the section is designed ' to cancel unlawful proceedings which have resulted or may have resulted in the

declaration of a false result' (*Matter of Coughlin*, 137 App. Div. 283, 285, affd. 198 N. Y. 613; cf. *Matter of Crawford* v. *Cohen*, 291 N. Y. 98).''

It was conceded during the argument of this appeal that after the various voters had identified themselves and their affiliations had been checked, they would enter the voting booth and before they were permitted to vote the watcher would lock the machine to bar them from voting for candidates other than those affiliated with their respective parties. This was agreed to by both parties and by a representative of the Board of Elections who was present. This precludes a claim that Republican voters might have crossed over to participate in the Democratic primary after they had entered the booth.

There is no fraud claimed, but it appears that irregularities definitely were present which undoubtedly were the result of the improper functioning of the voting machine. We cannot say whom the malfunction benefitted or harmed.

The Commissioners of Election of the County of Oswego, in which the City of Fulton is located, and who are neutral in this proceeding, presented an affidavit of compliance with various applicable sections of the Election Law including section 274. This affidavit specifically states that inspection of the voting machine before the commencement of the election disclosed that every counter registered zero. Compliance with section 274 would have required a test of the machine after the election to reveal the cause of the discrepancy in the returns. However, there is no specific statement that such a test was made or indicating the result of such a test if it was, in fact, conducted. In the absence of such a specific statement and in view of the stipulation we must conclude that the voting machine improperly and irregularly recorded votes which were not cast.

We find that the election was irregular within the meaning of subdivision 2 of section 330 of the Election Law and that it is impossible to determine who rightfully was nominated. The Democratic primary election for Mayor is, therefore, vacated and annulled, and a new primary contest should be held. In order to preserve the rights of suffrage of all persons in the city enrolled in the Democratic party, the primary must be citywide.

The order should be reversed and the motion granted.

WILLIAMS, P. J., BASTOW, GOLDMAN, HENRY and NOONAN, JJ., concur.

Order unanimously reversed, without costs of this appeal to any party, and motion for a new primary election granted in accordance with the opinion.